UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**EARTH WIND & FIRE IP, LLC**,

    Plaintiff,

v.

Case No. 1:23-cv-20884-FAM

**SUBSTANTIAL MUSIC GROUP LLC**
and **STELLAR COMMUNICATIONS, INC.**,

    Defendants.

_____/

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT STELLAR COMMUNICATIONS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER VENUE UNDER §1406**

Pursuant to Local Rule 7.1(c)(1), Defendants Stellar Communications, Inc. ("Stellar") and Substantial Music LLC ("Substantial," collectively with Stellar, the "Defendants") respectfully submit this reply memorandum of law in support of their Motion to Dismiss (Doc. No. 12; the "Motion").

**I.     INTRODUCTION**

In its opposition to the Motion (Doc. No. 16; the "Opposition"), Plaintiff relies upon the same deficient categories of activities set forth in the Complaint:

(1) Defendants use Plaintiff's "Earth, Wind & Fire" mark on Substantial's **website** and promotional materials, including a discussion of Defendants' band on their **website**, "accessible in Florida and throughout the country." Opposition, p. 5 (emphasis added);

(2) The homepage of Defendant's **website** includes a video reel[1]. *Id.* (emphasis added);

---

[1] In its Opposition, Plaintiff references an allegation of copyright infringement related to this video reel. As copyright infringement is not among the causes of action set forth in the Complaint, Defendants are not addressing such allegation as it relates to matters currently before the Court. Opposition, p. 5 and n. 3.

1

(3) Defendants "posted more blatantly infringing versions of their **website's** video on **YouTube** and **Facebook**, accessible to concert venues and residents of Florida and the rest of the country." *Id.*, p. 6 (emphasis added);

(4) Defendant's Pensacola, Florida event "was advertised and tickets were offered for sale to **the public, including the public in the Southern District of Florida** . . . ." *Id.* (emphasis added);

(5) The Pensacola event was promoted by the Saenger Theater "using an image of the three original members of 'Earth, Wind & Fire' . . . to promote Defendants' November 26, 2022 Florida show in **online advertising** . . . ." *Id.*, p. 7 (emphasis added);

(6) By "[a]pparently using promotional materials Defendants provided", *Pensacola Magazine* published a feature that "was **accessible in the Southern District of Florida**." *Id.*, p. 8 (emphasis added); and

(7) The Parker Playhouse used materials provided by Defendants "to advertise and offer tickets to Defendants' April, and later May, 2023 show **to members of the public throughout Florida, including in the Southern District of Florida** where the Parker Playhouse is located" and "[t]hat **advertising also was directed to residents in the Southern District of Florida and elsewhere** . . . . *Id.*, p. 9 (emphasis added).

These allegations are essentially the same as those set forth in the Complaint, which includes conclusory contentions that Defendants collectively "promoted concerts by its new group throughout the country, including in the Southern District of Florida" and that Defendants infringe Plaintiff's rights "through social media that is viewable throughout the United States, including in the Southern District of Florida." Complaint at ¶¶ 14 and 18. Plaintiff also generally references Google searches that reveal references to concerts that Defendants (collectively) are allegedly promoting in Ft. Lauderdale, Florida, Topeka, Kansas, "other venues," and "many other locations." *Id.* at ¶¶ 17, 19.

In the Opposition, Plaintiff states that "Defendants, including Stellar . . . entered into an agreement to perform at the Saenger Theater in Pensacola, Florida in November 2022."

Opposition, p. 6. Plaintiff makes the same statement with respect to the Fort Lauderdale, Florida show identified in the Complaint. *Id.*, p. 8. In fact, Substantial was the party that contracted with the Saenger Theater for the November 2022 event and with Parker Playhouse for the April 2023 event. Declaration of Richard Smith ("Smith Dec."), ¶ 5.

*Id*. Thus, although Plaintiff, through reference to its counsel's sworn declarations, argues that Stellar entered into certain contracts that enable this Court to exercise personal jurisdiction over it, these contentions are blatantly untrue. Substantial is the only Defendant that contracted with the Pensacola and Fort Lauderdale venues. *Id.*

As detailed herein, the factual allegations upon which Plaintiff relies, both in its Complaint and its Opposition, are insufficient to establish that the Court can properly exercise personal jurisdiction over Stellar or that the Southern District of Florida is a proper venue for this dispute.

## II.    ARGUMENT AND CITATION OF AUTHORITIES

### A. Plaintiff's Arguments Do Not Establish Specific Personal Jurisdiction Over Stellar

In its Opposition, Plaintiff references a series of 2019 communications among counsel as a basis for this Court's exercise of personal jurisdiction over Stellar. Opposition, p. 2 and Greenbaum Declaration at ¶ 2 and Exhibit A[2]. However, regardless of these communications as they related to the parties' positions nearly 4 years before Plaintiff initiated this lawsuit, the Due Process Clause "require[s] that individuals have 'fair warning that a particular activity may subject

---

[2] Similarly, Plaintiff's reliance on LinkedIn profiles for inferences to be made as to personal jurisdiction is misplaced, as neither of the profiles referenced in the Opposition identifies any contacts between Stellar and the State of Florida. Smith Dec., ¶¶ 6-7.

[them] to the jurisdiction of a foreign sovereign,'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (*quoting Shaffer v. Heitner*, 433 U.S. 186 (1977) (Stevens, J., concurring)). In determining whether they may exercise specific jurisdiction over defendants, courts must examine the defendant's contacts with the forum at the time of the events underlying the dispute.

When a court is exercising specific jurisdiction over a defendant "arising out of or related to the defendant's contacts with the forum," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984), the fair warning that due process requires arises not at the time of the suit, but when the events that gave rise to the suit occurred. In the instant trademark infringement suit before the Court, none of the activities complained about in 2019 involved contacts between Stellar and the State of Florida. In the communications appended to Mr. Greenbaum's declaration, the discussion specifically addresses Plaintiff's counsel's letters that were sent "to the River Center for the Performing Arts (Columbus, GA) and The Center for the Performing Arts (Carmel, IN) regarding the Events." Doc. No. 16-1. Thus, regardless of whether, at that time, Stellar was "the organizer of the Legacy Reunion events," Stellar's contacts with Florida were non-existent as they related to the infringing activities alleged in the 2019 correspondence.

Similarly, with respect to the more-recent accused activities that took place in Florida – in Pensacola in 2022 and in Fort Lauderdale in 2023 (before the event was cancelled), Stellar was not involved in those activities and, therefore, did not have sufficient minimum contacts with Florida to justify the exercise of personal jurisdiction over it by this Court. Substantial was the party that contracted for the two Florida events scheduled in 2022 and 2023. Smith Dec., ¶ 5. Stellar was not involved in the planning or promotion of these events and, as such, these events do

4

not constitute contacts between Stellar and Florida for the purpose of determining specific personal jurisdiction. Motion (Doc. No. 12), p. 3; Ferraro Dec. (Doc. No. 12-1), ¶ 10.

With respect to the numerous allegations based on Stellar's alleged digital presence in Florida, such contacts, standing alone, do not provide a basis for the exercise of personal jurisdiction over Stellar. All the allegations pertaining to Defendants' website and social media accounts and the activities undertaken thereon focus on allegedly infringing promotional materials, including video reels. Opposition, pp. 5-6 and 8. Plaintiff's allegations as to Defendants' online presence make clear that these digital assets are available not only in Florida, but all over the United States:

- Defendants' website is "**accessible in Florida and throughout the country**;"

- Defendants "posted more blatantly infringing versions of their website's video on YouTube and Facebook, accessible to concert venues and **residents of Florida and the rest of the country**; and

- Defendant's Pensacola, Florida event "was advertised and tickets were offered for sale **to the public, including the public in the Southern District of Florida** . . . ."

Opposition, pp. 5-6 (emphasis added). These arguments parrot those found in the Complaint, where Plaintiff alleges that Defendants' online presence extends throughout the country. Complaint, ¶¶ 14 and 18 (Defendants collectively "promoted concerts by its new group **throughout the country**, including in the Southern District of Florida" and that Defendants infringe Plaintiff's rights "through social media that is viewable **throughout the United States**, including in the Southern District of Florida.") (emphasis added).

As other courts in the Eleventh Circuit have stated on numerous occasions, "the internet does not provide cause to abandon traditional principles guiding the personal jurisdiction analysis." *Goforit Entm't, LLC v. Digimedia.com, L.P.*, 2007 U.S. Dist. LEXIS 75101, *7 (M.D. Fla. Aug. 10, 2007), *citing Instabook Corp. v. InstantPublisher.com*, 469 F. Supp. 2d 1120 (M.D. Fla. 2006).

> **Plaintiff notes that the moving Defendants' websites "direct visitors from across the nation** to the websites of others," (Pl.'s Mem., Doc. 41, at 11), and Plaintiff emphasizes that the moving **Defendants' "services are aimed at consumers and business[es] located in each and every state in the country, including Florida**, and their business model is specifically designed to generate revenue from each and every state in the country, including Florida." (Id. at 5) (emphasis in original).
>
> However, **Plaintiff's argument cuts against itself – the fact that Defendants' websites are equally accessible everywhere does not establish targeting of Florida**. *See, e.g., Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005) (pointing out that the defendant's website was "not directed at customers in the District of Columbia, but instead is available to all customers throughout the country who have access to the Internet"); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 339 U.S. App. D.C. 332, 199 F.3d 1343, 1349-50 (D.C. Cir. 2000) **("[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District**. Access to a website reflects nothing more than a telephone call by a District resident to the defendants' computer servers, all of which apparently are operated outside of the District.").

*Goforit Entm't.*, at *8-9 (emphasis added). Just as the court found in *Goforit*, the Court in the instant case should find that Defendants' website and social media accounts, available in all 50 states, do not constitute minimum contacts sufficient for the exercise of personal jurisdiction.

With respect to Plaintiff's allegations focused on the conduct of third parties, namely the promotion and sale of tickets for the Pensacola and Fort Lauderdale events by the respective venues, these activities were, by Plaintiff's own admission, undertaken by others, not Defendants:

- **The Pensacola event was promoted by the Saenger Theater** "using an image of the three original members of 'Earth, Wind & Fire' . . . to promote Defendants' November 26, 2022 Florida show in online advertising . . . ." Opposition, p. 7 (emphasis added)[3];

- By "[a]pparently using promotional materials Defendants provided", ***Pensacola Magazine* published a feature** that "was accessible in the Southern District of Florida." *Id.*, p. 8 (emphasis added);

---

[3] Additionally, the photographs used by the venue were not provided by Substantial, which as a matter of practice brings such issues to the attention of venues with specific instructions that the venue may only use materials provided by Substantial that identify only the artists performing at Substantial's event, along with Substantial's artwork. Smith Dec., ¶ 8.

6

- **The Parker Playhouse used materials** provided by Defendants **"to advertise and offer tickets to Defendants' April, and later May, 2023 show to members of the public** throughout Florida, including in the Southern District of Florida where the Parker Playhouse is located" and "[t]hat advertising also was directed to residents in the Southern District of Florida and elsewhere . . . . *Id.*, p. 9 (emphasis added).

Plaintiff's allegations as to allegedly infringing actions of the Pensacola and Fort Lauderdale venues cannot serve as the basis for the exercise of personal jurisdiction over Stellar, as "Florida's long-arm statute surely does not contemplate impugning the alleged tortious acts of wholly unrelated entities . . . onto [Stellar]". *La Tele Prods., Inc. v. TV Azteca*, 2018 U.S. Dist. LEXIS 164535, *11 (S.D. Fla. Sept. 25, 2018) (Moreno, J.).

> Plaintiffs are attempting to impute the conduct of the other named Defendants on TM Television. However, the Court may not consider the actions of the other Defendants in this case as those of TM Television for the purposes of determining whether there is personal jurisdiction over TM Television. *See, e.g., La Tele Prods., Inc. v. TV Azteca*, No. 16-25347-CIV, 2018 U.S. Dist. LEXIS 164535, 2018 WL 4623532, at *4 (S.D. Fla. Sept. 25, 2018) (Moreno, J.) (noting that Florida's long-arm statute "surely does not contemplate impugning the alleged tortious acts of wholly unrelated entities" onto codefendant entity seeking dismissal for lack of personal jurisdiction); *Verizon Trademark Servs., [LLC v. Producers, Inc.,]* 810 F. Supp. 2d [1321,] 1331 [(M.D. Fla. 2011)] ("This Court will not consider the actions of other defendants in this case as the actions of the IMG Defendants for the purposes of conducting a jurisdictional analysis."). *Cf. Sovereign Offshore Servs., LLC v. Shames*, No. 17-cv-80172, 2017 U.S. Dist. LEXIS 123514, 2017 WL 7798664, at *4 (S.D. Fla. Aug. 3, 2017) (Middlebrooks, J.) ("Defendant's awareness that his blog posts would be accessible in Florida, by virtue of the nature of the world-wide web, and [Plaintiff]'s physical location in Florida are insufficient to establish that Defendant has minimum contacts with Florida.").

*Sifonte v. Fonseca*, 2022 U.S. Dist. LEXIS 145516, *29-30 (S.D. Fla. Aug. 12, 2022). As set forth in Defendants' moving papers and herein, Plaintiff has failed to meet its burden on personal jurisdiction and Defendants respectfully submit that the Court should **GRANT** Stellar's Motion to Dismiss under Rule 12(b)(2).

### B. Dismissal of This Suit Pursuant to Rule 12(b)(3) is Appropriate Because Venue in the Southern District of Florida is Improper.

As set forth in Defendants' motion, as a threshold matter, venue is improper in the Southern District of Florida, a judicial district where Stellar is not subject to personal jurisdiction. *See Ellis v. Great Southwestern Corp.*, 646 F. 2d 1099, 1106-07 (5th Cir. 1981); *see also Miot v. Kechijian*, 830 F. Supp. 1460, 1466 (S.D. Fla. 1993) (a proper venue is a judicial district where <u>all</u> the defendants would be subject to personal jurisdiction).

Additionally, in response to Defendants' arguments that venue is improper in the Southern District of Florida, Plaintiff states as follows:

> Defendants "passed off" their infringing services in many districts, including the Southern District of Florida, through their "passing off" of their services on their SMG website, the Facebook and YouTube social media postings, and their solicitation of, advertising for, and scheduled performances at the Saenger Theatre in Pensacola and Parker Playhouse in Ft. Lauderdale, announced in advertising accessible to residents of the Southern District of Florida for over a year. That establishes the propriety of venue in this district.

These two sentences represent the entirety of Plaintiff's substantive argument in opposition to Defendants' Rule 12(b)(3) motion. However, Plaintiff ignores that portion of the Eleventh Circuit precedent relied upon in Defendants' Rule 12(b)(3) motion which requires that "of the places where the events have taken place, only those locations hosting a '**substantial part**' of the events are to be considered." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003) (emphasis added). As set forth in Defendants' moving papers, a "substantial part" of the events complained of did not arise in the Southern District of Florida, including those activities related to Defendants' online presence. Taken with the scant venue allegations in the Complaint, Plaintiff's arguments do not support a finding that venue is proper in the Southern District of Florida. *Kennedy v. Gope Hotel Enters.*, 2019 U.S. Dist. LEXIS 89870, *9-11 (S.D. Fla. May 28, 2019).

> If Plaintiff were right that the simple act of accessing Defendants' websites is sufficient to confer venue, Plaintiff would be able to establish venue in his home

district over any hotel in the country that maintains a website that can be accessed by Plaintiff and that violates these regulations under the ADA. Such a rule would drastically widen the scope of the current venue statute, and I do not adopt an interpretation of that statute that would produce such far-reaching results.

*Poschmann v. Ponte Vedra Corp.*, 2018 U.S. Dist. LEXIS 217469, * 7 (S.D. Fla. Dec. 27, 2018). Plaintiff cannot establish that a "substantial" portion of Defendants' alleged wrongdoing occurred in the Southern District of Florida. Coupled with the inability of the Court to exercise personal jurisdiction over Stellar, the Southern District of Florida is an improper venue and Defendants respectfully submit that the Court should GRANT their Rule 12(b)(3) motion.

### C. Defendants' Transfer Motion Was Brought Under Section 1406(a), not Section 1404(a).

As Defendants argue in their Motion, if venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Plaintiff misconstrues Defendants' transfer of venue arguments as having been brought under the "convenience of the parties and witnesses" standard of 28 U.S.C. § 1404(a). Opposition, pp. 16-18. Such is not the case.

Where venue is improper, the Court, in its discretion, can decide whether to transfer or dismiss. *Organic Mattresses, Inc. v. Enviornmental Res. Outlet, Inc*., 2017 U.S. Dist. LEXIS 166628, *32-33 (S.D. Fla. Oct. 6, 2017) ("In this case, venue is not proper in the Southern District of Florida under any part of 28 U.S.C. § 1391(b) because (1) there is no personal jurisdiction over at least one Defendant in this forum and (2) there is no credible evidence to suggest that this is the location where a substantial portion of the events took place. As such, a court lacking personal jurisdiction may transfer a case under either § 1404(a) or § 1406(a).") (internal quotations omitted); *Brownsberger v. Nextera Energy, Inc*., 436 F. App'x 953, at *1 (11th Cir. Aug. 5, 2011); *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc*., 689 F.2d 982, 985 (11th Cir. 1982). Through the Motion, Defendants' position was that the Court, in its discretion, can transfer this

action pursuant to 28 U.S.C. § 1406(a) to a venue where Plaintiff could have brought the lawsuit, as an alternative to dismissal for lack of personal jurisdiction and improper venue. Defendants pointed out that the Northern District of Georgia was such a venue, a clear indication that they would not contest personal jurisdiction or venue if the Court chose to transfer this action rather than dismiss it.

However, in view of Plaintiff's objection to the Northern District of Georgia, Defendants submit that dismissal of this action is completely appropriate at this juncture. *See Silver v. Karp*, 2014 U.S. Dist. LEXIS 119462, at *11-12 (S.D. Fla. Aug. 27, 2014) (dismissing action where "Plaintiff has opposed Defendants' argument that the case should be transferred to the Eastern District of New York, and it is not certain that Plaintiff wishes to pursue his case in that forum.").

### III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court **GRANT** their Motion to Dismiss Plaintiff's Complaint for lack of personal jurisdiction and/or improper venue.

DATED:  June 6, 2023              Respectfully submitted,

**FRIEDLAND VINING, P.A.**

/s/David K. Friedland
By:  **David K. Friedland**
Florida Bar No. 833479
Email:  dkf@friedlandvining.com
**Jaime Rich Vining**
Florida Bar No. 030932
Email:  jrv@friedlandvining.com
6619 South Dixie Highway, PMB 157
Miami, FL 33143
(305) 777-1725 – telephone
(305) 456-4922 – facsimile

## CERTIFICATE OF SERVICE

      I hereby certify that on the above referenced date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the Manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

David I. Greenbaum, Esq.
David.Greenbaum@rimonlaw.com
Mark S. Lee, Esq.
Mark.Lee@rimonlaw.com
RIMON, P.C.
333 SE 2nd Avenue, Suite 2000
Miami, FL 33131
*Service via CM/ECF*

                                              s/David K. Friedland
                                                David K. Friedland