**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**EARTH WIND & FIRE IP, LLC,**

        Plaintiff,

                                       **Case No. 1:23-cv-20884-FAM**

v.

**SUBSTANTIAL MUSIC GROUP LLC**
and **STELLAR COMMUNICATIONS, INC.,**

        Defendants.

_____/

**<u>DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Pursuant to Fed.R.Civ.P. 56 and Local Rule 56.1, Defendants Substantial Music Group LLC ("Substantial") and Stellar Communications, Inc. ("Stellar;" collectively, "Defendants") respectfully move for summary judgment against Plaintiff Earth Wind & Fire IP, LLC ("EWF" or "Plaintiff"), as to each of the trademark-related claims asserted against Defendants in this action. This Motion for Summary Judgment is supported by the pleadings on file in this matter, as well as the following documents, all of which are being filed concurrently herewith: (1) Declaration of Richard Smith ("Smith Decl."); and (2) Declaration of David K. Friedland ("Friedland Decl."). This Motion is also supported by Defendants' Local Rule 56.1 Concise Statement of Undisputed Material Facts ("SOF").

Specifically, Defendants seek summary judgment against Plaintiff as to the following claims asserted against Defendants: (1) Federal Trademark Infringement (First Claim for Relief); (2) Federal Unfair Competition, False Designation of Origin, and False Endorsement (Second Claim for Relief); (3) Federal False Advertising (Third Claim for Relief); and (4) Federal Trademark Dilution (Fourth Claim for Relief).[1] Defendants respectfully request that the Court enter an Order granting summary judgment in favor of Defendants on each of Plaintiff's claims, as set forth herein.[2]

## I.      FACTUAL BACKGROUND

In or about 2019, Richard "Dick" Smith, a lifelong musician who toured and recorded with EARTH WIND & FIRE in the late 1980's and early 1990's, formed a band comprised of, *inter alia*, fellow EARTH WIND & FIRE alumni. SOF, ¶¶ 1-9. In deciding how to name and promote

---

[1] In each of its Four Claims for Relief, Plaintiff asserts separate violations of its "EARTH WIND & FIRE" word mark and its so-called PHOENIX Logo, which Defendants address separately in this Memorandum.
[2] As of the filing of this Motion, Plaintiff's Motion to Dismiss Defendants' Counterclaim and to Strike Defendants' First Affirmative Defense (Doc. No. 26) remains pending before the Court. Therefore, as Plaintiff has yet to answer the Counterclaim, Defendants have not included the Counterclaim in this Motion.

• **FRIEDLAND VINING, P.A.** •
(305) 777-1725 • court@friedlandvining.com

this new group, Mr. Smith researched how other performers who played EWF music in their acts identified themselves and found numerous acts using the EARTH WIND & FIRE name and artwork in their promotions and decided to use the name EARTH WIND & FIRE LEGACY REUNION ("EWFLR"), denoting that several former members who toured and/or recorded with EWF would be reuniting to perform some of the EWF music they had performed in the past. *Id.,* ¶¶ 10-11. The first two EWFLR acts were booked through Stellar for the Center for the Performing Arts in Carmel, Indiana on October 26, 2019, and the River Center for the Performing Arts in Columbus, Georgia on November 29, 2019. *Id.*, ¶¶ 12-13.

During the four-plus years that Defendants have been involved in the marketing, production, and performance of LEGACY REUNION act shows, the following EWF alumni have performed as part of the LEGACY REUNION OF EARTH WIND & FIRE ALUMNI act (with their tenures with EWF): Richard Smith (1987-1991); Danny Reyes (2001-2004); Vance Taylor (1987-1993); Sonny Emory (1987-1999); Morris Pleasure (1993-2001); and David Romero (1993-2002). *Id.*, ¶ 14. Each of these LEGACY REUNION act members participated in rehearsals, world tours, and/or recordings with EWF for numerous years, making them alumni of EWF whose tenures lasted between 4 and 12 years. *Id.*, ¶ 15.

On September 18, 2019, EWF sent correspondence advising of EWF's objection to the EWFLR name and artwork being utilized to promote these first two shows. *Id.*, ¶ 28. On October 8, 2019, Defendants' then-counsel, Joel Feldman, presented Mr. Greenbaum with three alternative graphics reflecting the new name selected for their musical performance act – LEGACY REUNION OF EARTH WIND & FIRE ALUMNI – incorporated into artwork that was intended to address the concerns raised in the three demand letters sent by EWF. *Id.*, ¶¶ 29-31. On October

2

18, 2019, EWF's counsel responded to Defendants' counsel's email with the three alternative graphics provided, stating as follows: "I explained that while I was not in position to agree that the matter was resolved, the attached proposed logo was preferred over the current logo that is being used to promote upcoming concerts." The attached proposed logo sent with EWF's counsel's email was the following:



*Id.*, ¶ 32. As a result of these communications, Defendants immediately adopted the graphic going forward and have used the name LEGACY REUNION OF EARTH WIND & FIRE ALUMNI exclusively between 2019 and today, in various configurations that keep the name intact and have sometimes included additional graphics within the artwork, featuring additional flames and/or spaceships, as follows:



 

(the "Current LEGACY REUNION Graphics"). *Id.*, ¶ 33. Following the October 2019 correspondence, neither Defendants nor their counsel heard from EWF again until 2022, when EWF's counsel contacted Defendants' counsel regarding an event scheduled for September 30, 2022 that Defendants were promoting at Canton Palace Theatre in Canton, Ohio. Defendants addressed the concerns raised in the correspondence and did not hear from EWF regarding the Canton Palace Theatre event again. *Id.*, ¶¶ 34-37. However, in December 2022, EWF communicated with Defendants' counsel again, this time in connection with an event scheduled for February 2023 in Davenport, Iowa. *Id.*, ¶¶ 37-38.

EWF admits to not taking any action against Defendants between 2019 and 2022: "Nirvana [sic, EWF] admits that during the Covid 19 pandemic, when Defendants' 'Legacy Reunion' band was not touring and therefore not infringing EWF's rights through use of EWF's marks to promote concerts it was not performing, leading EWF to mistakenly believe it had stopped its infringing conduct." *Id.*, ¶ 39. EWF also admits that, in October 2019, when Mr. Greenbaum emailed Mr. Feldman regarding the "preferred" logo – namely, the Current LEGACY REUNION Graphics – the parties were "headed in the right direction." *Id.*, ¶ 45.

Within 8 days of Mr. Greenbaum's October 18, 2019 email confirming the "preferred"

logo, Defendants adopted the Current LEGACY REUNION Graphics in time for their first LEGACY REUNION show, on October 26 2019. *Id.*, ¶ 46. While EWF has stated that it took no action because Defendants were not performing during the COVID-19 pandemic, they did not voice any complaints to Defendants about their use of the Current LEGACY REUNION Graphics in connection with the two 2019 shows, as there were no communications between the parties until mid-2022 following the October 18, 2019 exchanges, and the very promotional and performance videos identified in Plaintiff's Complaint have been accessible continuously during EWF's period of delay, including during COVID-19. *Id.*, ¶¶ 34, 39-40, 46.

Similarly, information about some of the third parties located during Mr. Smith's 2019 research has remained online for years with no action taken by EWF until October 2023, when EWF sent demand letters to six third parties, most of whom Defendants identified to EWF in this lawsuit. EWF claims to not have known about these uses of its claimed trademarks, notwithstanding having in place, for at least five years, a program or policy by which it monitors for potentially infringing uses of EWF's trademarks. *Id.*, ¶ 44. However, Mr. Smith found them through a simple Google search just over four years ago and numerous third parties remain online, including through the following links that he accessed on November 29, 2023:

> https://earthwindandfiretributeband.com/
> https://www.lyrictheatre.com/past-show/9202-elements-the-ultimate-earth-wind-and-fire-tribute
> https://www.newshiningstar.com/
> https://j-fell.com/kalimba/
> https://ultraartists.com/earth-wind-fire-tribute-band/
> https://www.eventbrite.com/e/the-earth-wind-fire-tribute-band-tickets-689683089687

Notwithstanding EWF's demand letters sent in October 2023, at least three of the links located by Mr. Smith remain active, including "Kalimba The Spirt of Earth Wind and Fire" (located at j-

fell.com/kalimba), "Earth, Wind & Fire Tribute Band" (located at ultraartists.com/earth-wind-fire-tribute-band), and "Earth Wind & Fire Tribute Band Let's Groove Tonight" (located at earthwindandfiretributeband.com). *Id.*, ¶¶ 41-43.

## II.    ARGUMENT AND CITATION OF AUTHORITIES

### A.  Summary Judgment Legal Standard

Summary judgment is regarded as a favored procedural shortcut and integral part of the federal rules as a whole, which are designed to secure a just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c) ("[summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

> Summary judgment is authorized where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The non-movant must present more than a scintilla of evidence in support of the non-movant's position. A jury must be reasonably able to find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

*Adria MM Prods. v. Worldwide Entm't Grp., Inc.*, 2018 U.S. Dist. LEXIS 152191, *7-8 (S.D. Fla. Sept. 6, 2018); *Heron Dev. Corp. v. Vacation Tours, Inc.*, 2018 U.S. Dist. LEXIS 98316, *10 (S.D. Fla. June 12, 2018); *Thompkins v. Lil' Joe Records, Inc.*, 2004 U.S. Dist. LEXIS 30892, *5-6 (S.D. Fla. Dec. 7, 2004). If the moving party satisfies its burden, the non-moving party may not rely on

6

denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that a genuine issue for trial exists. *See* Fed. R. Civ. P. 56(e).  Although inferences must be viewed in the light most favorable to the non-moving party, inferences must be based on evidence, which if believed, would be sufficient to support a judgment for the non-moving party. *Celotex Corp.*, 477 U.S. at 322.

A court's focus is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). An action is devoid of a material issue "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To overcome a motion for summary judgment, the non-moving party is required to set forth sufficient and specific facts which show there is a genuine issue for determination at trial. *Celotex Corp.*, 477 U.S. at 322-23; *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013); *Sims v. MVM, Inc.*, 704 F.3d 1327, 1330 n. 2 (11th Cir. 2013). A mere scintilla of evidence in support of the non-movant's position is not enough. *See Anderson*, 477 U.S. at 251-53; *see also Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1316 (11th Cir. 2012). Neither "the mere existence of some alleged factual dispute between the parties," *see Anderson*, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *see Matushita*, 475 U.S. at 586, will defeat a motion for summary judgment. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.* at 587.

• FRIEDLAND VINING, P.A. •
(305) 777-1725 • court@friedlandvining.com

### B. Defendants are Entitled to Summary Judgment on Plaintiff's Trademark-Related Claims

To establish a *prima facie* case of trademark infringement and unfair competition, false designation of origin, or false endorsement under § 43(a) of the Lanham Act, and federal dilution, a plaintiff must show, *inter alia*, (1) that it has trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two. *Suntree Techs., Inc. v. Econsense Intern., Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012); *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997). In the instant case, however, the traditional trademark infringement analysis is unnecessary, for two specific reasons. First, Plaintiff's allegations as to the EARTH WIND & FIRE word mark must fail, as a matter of law, through an application of the nominative fair use doctrine.[3] Second, Plaintiff's allegations as to both the EARTH WIND & FIRE word mark and the so-called PHOENIX logo marks must also fail due Defendants' affirmative defenses of laches, estoppel, and acquiescence.[4] Thus, regardless of Plaintiff's alleged ownership of its trademark rights and any potential likelihood of confusion, Plaintiff's claims must fail as a matter of law, as detailed herein.

---

[3] Although the Eleventh Circuit has yet to subscribe to any reformulation of the traditional likelihood of confusion inquiry in the setting of nominative fair use cases, this Court has acknowledged that other circuits have done so. *AT&T Mobility, LLC v. Digital Antenna, Inc.*, 2010 U.S. Dist. LEXIS 151643, *63 n. 38-39 (S.D. Fla. Feb. 8, 2010) ("In the Ninth Circuit, the nominative fair use framework replaces the likelihood of confusion test altogether. *See Cairns v. Franklin Mint*, 292 F.3d 1139, 1151 (9th Cir. 2002).").

[4] By arguing in support of their affirmative defenses, Defendants are not conceding that Plaintiff can meet its burden in establishing a *prima facie* case in support of its asserted four causes of action. Rather, Defendants' position is that even if Plaintiff could possibly prove that Defendants committed the alleged acts, which Defendants vigorously dispute, the affirmative defenses of laches, estoppel, and acquiescence negate any potential civil liability associated with Plaintiff's four stated causes of action.

1.  **Defendants' Use of "EARTH WIND & FIRE" Constitutes
    Non-Actionable Nominative Fair Use.**

The doctrine of nominative fair use ("NFU") provides that, notwithstanding the traditional standards for determining trademark infringement, "one can use another's mark truthfully to identify another's goods or services in order to describe or compare its product to the markholder's product" without engaging in actionable conduct. *MPS Entm't, LLC v. Abercrombie & Fitch Stores, Inc.*, 2013 U.S. Dist. LEXIS 91193, *43 (S.D. Fla. June 28, 2013), *quoting Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 545 (5th Cir. 1998) (citations omitted). "[W]here a nominative use of a mark occurs without any implication of affiliation, sponsorship or endorsement - i.e., likelihood of confusion - the use 'lies outside the strictures of trademark law.'" *Id.* (*quoting New Kids on the Block v. News America Pub., Inc.,* 971 F.2d 302, 308 (9th Cir. 1992), *cited with approval in Int'l Stamp Art, Inc. v. U.S. Postal Serv.,* 456 F.3d 1270, 1277 (11th Cir. 2006) (classic fair use case) (affirming summary judgment)).

> Moreover, Derrico merely used Suntree's mark to truthfully refer to Suntree's own product. Such use is not confusing "because it does not imply sponsorship or endorsement by the trademark holder." *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). In fact, many circuits have held that "[s]uch nominative use of a mark . . . lies outside the strictures of trademark law." *Id.; see also Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.,* 550 F.3d 465, 488 (5th Cir. 2008) (holding that it is permissible to "use another's mark truthfully to identify another's goods or services"); *Century 21 Real Estate Corp. v. LendingTree, Inc.,* 425 F.3d 211, 231-32 (3d Cir. 2005) (recognizing "nominative fair use" as an affirmative defense to trademark infringement).

*Suntree Techs., Inc. v. EcoSense Int'l, Inc.*, 802 F. Supp. 2d 1273, 1282 (M.D. Fla. 2011), *aff'd*, 693 F.3d 1338, 1346 (11th Cir. 2012); *see also Setai Hotel Acquisitions, LLC v. Luxury Rentals Miami Beach, Inc.,* 2016 U.S. Dist. LEXIS 171396, *7-8 (S.D. Fla. Dec. 12, 2016) (Moreno, J.):

> "The fair use defense, in essence, forbids a trademark registrant to appropriate a descriptive term for its exclusive use and so prevent others from accurately describing a characteristic of their goods [or services]." *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citations omitted). A defendant can establish a fair use defense if a

9

defendant demonstrates that its use is other than as a mark, in a descriptive sense, and in good faith. *Id.* **"One can use another's mark truthfully to identify another's goods or services in order to describe or compare its product to the markholder's product."** *Bd. of Supervisors of the Louisiana State Univ. v. Smack Apparel Co.*, 438 F. Supp. 2d 653, 662 (E.D. La. 2006); *see also New Kids on the Block v. News America Pub., Inc.*, 971 F.2d 302 (9th Cir. 1992) (upholding a newspaper's naming of a band "The New Kids on the Block" because there were no words available to denote the band other than by its name).

(Emphasis added). NFU can be decided as a matter of law on a motion for summary judgment.

*Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 801-02 (9th Cir. 2002); *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 309 (9th Cir. 1992); *Zahourek Sys. v. Balanced Body Univ., LLC*, 2016 U.S. Dist. LEXIS 47165, *40 (D. Col. Apr. 7, 2016).

The Ninth Circuit first articulated the test for permissible NFU in *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992), setting forth a three-part test:

First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

The *New Kids* Court also noted that a nominative fair use may also be a commercial one. *Id.* at 309 ("Where, as here, the use does not imply sponsorship or endorsement, the fact that it is carried on for profit and in competition with the trademark holder's business is beside the point."). Courts in the Eleventh Circuit have looked at the issue of nominative fair use ("NFU") in the setting of former band members on previous occasions, applying the same three-part test adopted in *New Kids*:

The NFU test is appropriate "where a defendant has used the plaintiff's mark to describe the plaintiff's product, *even if the defendant's ultimate goal is to describe his own product*." *Cairns*, 292 F.3d at 1151[5] (emphasis in original). The two defenses are mutually exclusive and require separate analyses. *See id.* at 1150 (explaining the important differences between the two defenses). Here, the Court applies the NFU test because Mr. McClary uses Plaintiff's Marks to describe Plaintiff's band—the Commodores—while ultimately describing his own band. *See id.* at 1151-52.

---

[5] *Cairns v. Franklin Mint Co.*, 292 F.3d 1139 (9th Cir. 2002).

• FRIEDLAND VINING, P.A. •
(305) 777-1725 • court@friedlandvining.com

To succeed on this defense, Defendants must establish that: (1) Plaintiff's product or service is not readily identifiable without use of the trademark; (2) Defendants used only so much of the mark as is reasonably necessary to identify the plaintiff's product or service; and (3) the user of the mark does nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *Id.* at 1151.

Under the NFU test, a defendant is not entitled to *any* truthful, historical reference; rather, such a reference must *precede* the plaintiff's mark and the mark itself must not be more prominently featured than the associational language. *Kassbaum v. Steppenwolf Prods.*, 236 F.3d 487, 492-93 (9th Cir. 2000). It is clear that Mr. McClary intends "to uphold his notoriety as a Commodore" by making reference to his association with the famed group in his own band name. (*See* Doc. 56, p. 9.) He may do so by: (1) performing under one of the Suggested Band Names (*see* Doc. 378, p. 5); or (2) choosing a different name so long as the historically accurate reference *precedes* the Marks—that is, Mr. McClary's name or historical reference must come *before* reference to the "Commodores."

*Commodores Entm't Corp. v. McClary*, 314 F.Supp.3d 1246, 1249-50 (M.D. Fla. June 13, 2018), *aff'd,* 879 F.3d 1114 (11th Cir. 2018); *Parsons v. Regna*, 2020 U.S. Dist. LEXIS 108283, *17 (M.D. Fla. Mar. 20, 2020) (*citing Commodores* for proposition that defendant was free to make fair use of marks and to use "historically accurate names.").

In the instant case, performers who have performed as a part of Defendants' LEGACY REUNION act have extensive background performing with EARTH WIND & FIRE, including the following (with their years of association with EARTH WIND & FIRE):

Richard Smith (1987-1991)
Danny Reyes (2001-2004)
Vance Taylor (1987-1993)
Sonny Emory (1987-1999)
Morris Pleasure (1993-2001)
David Romero (1993-2002)

SOF, ¶ 14. These members participated in rehearsals, world tours, and recordings with EARTH WIND & FIRE for numerous years, making them alumni of EWF whose tenures lasted between 4 and 12 years. *Id.*, ¶ 15. In September and October 2019, after Plaintiff complained to Defendants

and certain of their venues regarding the initial EARTH WIND & FIRE LEGACY REUNION name used to identify their LEGACY REUNION act, Defendants, through counsel, engaged in discussions with Plaintiff's counsel and settled, with Plaintiff's consent to what it considered a "preferred" option, upon the name LEGACY REUNION OF EARTH WIND & FIRE ALUMNI as their revised name. *Id.*, ¶¶ 28-33. Defendants' revised name respected Plaintiff's wishes as to a "preferred" option and, importantly, followed the guidance set forth in prior cases addressing NFU as it relates to band names, namely, as set forth in *Commodores*, *Parsons*, *Kassbaum*, and other decisions, that "a [truthful, historical] reference must *precede* the plaintiff's mark and the mark itself must not be more prominently featured than the associational language:"





*Id.*, ¶ 33. The presentation of Defendants' mark commenced in October 2019, in time for the initial LEGACY REUNION Act show on October 26, 2019, and continued in this manner, with Plaintiff's blessing (as detailed below in the discussion of certain of Defendants' affirmative defenses), through

• FRIEDLAND VINING, P.A. •
(305) 777-1725 • court@friedlandvining.com

Plaintiff's initiation of this civil action and continuing to the Defendants' most recent show in November 2023 in St. Petersburg, Florida. *Id.*, ¶¶ 16, 33, 46. Furthermore, in all instances where Defendants' LEGACY REUNION act has been identified by third parties in a manner that did not track the NFU guidance set forth in prior decisions, such use was not authorized by Defendants and, in those situations where such use was brought to Defendants' attention, steps were taken to seek modifications to the identification of Defendants' LEGACY REUNION act by third parties, whether they were venues or ticketing services. *Id.*, ¶¶ 17, 20.

As set forth in various decisions addressing the use of band name marks by former members, Defendants' act's name – LEGACY REUNION OF EARTH WIND & FIRE ALUMNI – satisfies the requirements for establishing that such use is nominative fair use that is non-actionable under the Lanham Act. The historical reference – LEGACY REUNION – precedes Plaintiff's mark and the EARTH WIND & FIRE mark is no more prominently featured than the associational language. *Commodores*, 314 F.Supp.3d at 1249-50, *citing Kassbaum v. Steppenwolf Prods.*, 236 F.3d 487, 492-93 (9th Cir. 2000).

Based on the foregoing, Defendants' use of EARTH WIND & FIRE in the context of its full band name – LEGACY REUNION OF EARTH WIND & FIRE ALUMNI – constitutes a nominative fair use of Plaintiff's trademark and should be deemed non-actionable under the applicable case law. As such, Defendants respectfully submit that they are entitled to summary judgment on all four counts of the Complaint as they related to the EARTH WIND & FIRE word mark.

## 2. Plaintiff's Claims as to the PHOENIX Logo are Barred by Defendants' Affirmative Defenses.

With respect to Plaintiff's allegations stemming from both Defendants' use of EARTH WIND & FIRE word mark and Defendants' logo, Plaintiff's actions in notifying Defendants,

through the parties' respective counsel, that Defendants' current logo, adopted in October 2019, incorporating the LEGACY REUNION OF EARTH WIND & FIRE ALUMNI wording, and used continuously since 2019, was "preferred" reasonably led Defendants to conclude that the current wording and logo would not be the subject of an assertion of Plaintiff's trademark rights against Defendants. SOF, ¶¶ 19, 21. As such, Defendants respectfully submit that Plaintiff's claims as to the so-called PHOENIX logo are barred by certain of Defendants' Affirmative Defenses.

### (a) Acquiescence/Consent

In October 2019, Defendants, through counsel, presented various new presentations of artwork associated with their LEGACY REUNION Act, in response to demand letters sent by Plaintiff's counsel to Defendants and the venues where their first two LEGACY REUNION Act shows were scheduled to occur. SOF, ¶¶ 28-33. As a result of these communications, Plaintiff's counsel, on October 18, 2019, attached one of the examples of Defendants' proposed new artwork submissions and identified it as the option that was "preferred over the current logo:"



SOF, ¶ 32 (emphasis added). In reliance upon these 2019 discussions, Defendants adopted the "preferred" version represented in the Current LEGACY REUNION Graphics. *Id.* at ¶ 19, 21-22, 24-25, 33-34. From October 18, 2019 through the March 2023 filing of this lawsuit, Plaintiff did not object to the Current LEGACY REUNION Graphics. *Id.* at ¶¶ 35, 37. Although Plaintiff sent

demand letters to Defendants' counsel in June and December 2022 in the lead up to the initiation of this civil action, those letters addressed conduct undertaken not by Defendants but by third parties acting without Defendants' knowledge and/or authorization. *Id.* at ¶¶ 34-37. Those letters did not include any objections to the Current LEGACY REUNION Graphics. *Id.*

"The defense [of acquiescence] requires proof of three elements: (1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir. 1996); *Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1563-1564 (11th Cir. 1991), *citing Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1517 (11th Cir. 1984) ("[t]he same three elements applied in the acquiescence in registration are applicable to the acquiescence in use issue: (1) That petitioner actively represented that it would not assert a right or a claim; (2) that the delay between the active representation and assertion of the right or claim was not excusable; and (3) that the delay caused the registrant undue prejudice. "The difference between acquiescence and laches is that laches denotes passive consent and acquiescence denotes active consent." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1207 (11th Cir. 2008). "'Active consent' does not necessarily mean an explicit promise not to sue. It only requires 'conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that plaintiff would not assert his trademark rights against the defendant.'" *Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1282 (11th Cir. 2012).

In the instant case, Plaintiff's actions, and Defendants' reliance on them, satisfy all the required elements of the acquiescence affirmative defense. First, Plaintiff specifically and actively

represented that Defendants' Current LEGACY REUNION Graphics was "preferred over the current logo that is being used to promote upcoming concerts," a clear statement that Plaintiff would not assert a right or a claim based upon the Current LEGACY REUNION Graphics. SOF, ¶¶ 18, 21, 32. This representation was confirmed in EWF's testimony, which clearly indicated that, upon Defendants' presentation of three potential new sets of graphics and EWF's acceptance of one of them as "preferred," that the parties "were headed in the right direction." *Id.*, ¶ 45. Second, the delay between October 2019 and March 2023 between Plaintiff's representation and its assertion of a claim based upon the Current LEGACY REUNION Graphics, a span of 41 months, was inexcusable. While Plaintiff has indicated that it took no action because Defendants were not performing during the COVID-19 pandemic, Defendants implemented the Current LEGACY REUNION Graphics in time for their very first LEGACY REUNION show, on October 26, 2019, several months before COVID-19. *Id.*, ¶¶ 22, 26. Also, the very promotional and performance videos identified in Plaintiff's Complaint initiating this action in March 2023 have been accessible continuously during Plaintiff's period of delay, making Plaintiff's delay inexcusable. *Id.*, ¶¶ 39-40. Third, the prejudice caused Defendants by Plaintiff's flip-flopping position is undeniable. Defendants adopted, used, and promoted the Current LEGACY REUNION Graphics in reliance upon Plaintiff's communications identifying it as "preferred over the current logo," and have done so continuously since making the change to their artwork in 2019. Plaintiff's conduct in expressly representing its preference for the Current LEGACY REUNION Graphics and then changing its mind and filing a lawsuit premised, in part, on the preferred artwork is an example of acquiescence that should be recognized by this Court. *Id.*, ¶¶ 18-19, 21-25. In view of the foregoing, Defendants

• FRIEDLAND VINING, P.A. •
(305) 777-1725 • court@friedlandvining.com

respectfully submit that the Court should **GRANT** Defendants summary judgment on their affirmative defense of acquiescence.

### (b) Estoppel

As with Defendants' acquiescence defense, the affirmative defense of estoppel requires that: "(1) the party against whom estoppel is sought made a representation about a material fact that is contrary to a position it later asserts, and (2) the party seeking estoppel detrimentally relied on that representation." *Ford Motor Co. v. O.E. Wheel Distribs., LLC*, 868 F. Supp. 2d 1350, 1366 (M.D. Fla. Apr. 12, 2012), *quoting SourceTrack LLC v. Ariba, Inc.*, 958 So.2d 523, 526 (Fla. App. 2007). Equitable estoppel is based on principles of "fair play and essential justice" and arises when one party lulls another into a disadvantageous legal position. *Id.*, *quoting Major League Baseball v. Morsani*, 790 So.2d 1071, 1076 (Fla. App. 2001).

As set forth above, Plaintiff's counsel expressly represented to Defendants' counsel that the Current LEGACY REUNION Graphics, which incorporates both the wording LEGACY REUNION OF EARTH WIND & FIRE ALUMNI and a logo design, was "preferred over the current logo" and EWF agreed that the parties were "headed in the right direction" in October 2019, positions that were not contradicted or retracted when Defendants implemented the Current LEGACY REUNION Graphics just over a week later.  By filing this civil action, Plaintiff has asserted a position that is contrary to that represented by its counsel in 2019, namely that the "preferred" Current LEGACY REUNION Graphics was suddenly offensive to Plaintiff. Finally, Defendants, by adopting and using the Current LEGACY REUNION Graphics for four years and counting, detrimentally relied upon Plaintiff's 2019 representation, investing time and resources into developing their LEGACY REUNION act by creating and utilizing promotional materials that incorporate the Current LEGACY

• FRIEDLAND VINING, P.A. •
(305) 777-1725 • court@friedlandvining.com

REUNION Graphics for all of their performances throughout the United States. Smith Decl., ¶¶ 30-40.

Accordingly, Defendants respectfully submit that the Court should GRANT them summary judgment on the affirmative defense of equitable estoppel.

### (c) Laches

Laches is an equitable defense and arises from "the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." *Ford Motor*, 868 F. Supp. 2d at 1366, *quoting Precision Shooting Equip., Inc. v. Golden Eagle Indus., LLC*, 2005 U.S. Dist. LEXIS 36163, *3-5 (M.D. Fla. 2005). In order to put forth such a defense, a defendant must show that there was: (1) an unreasonable delay in the plaintiff's assertion of a right or claim; (2) the delay was not excusable; and (3) the delay caused undue prejudice. *Citibank, N.A. v. Citibanc Group, Inc.*, 724 F.2d 1540, 1546 (11th Cir. 1984).

The defense of laches is meant to protect those defendants who spend time, effort, and money building their reputation under a particular brand name:

> Laches is meant to protect an infringer whose efforts have been aimed at build[ing] a valuable business *around its trademark* and an important reliance *on the publicity of [its] mark*, citing 6 McCarthy on Trademarks and Unfair Competition §31:12 (emphasis in original).

*Ford Motor*, 868 F. Supp. 2d at 1366, *quoting Internet Specialties West, Inc. v. Milon-Digiorgio Enters.*, 559 F.3d 985, 992 (9th Cir. 2009). If a plaintiff knows that a defendant is building goodwill around a particular mark, yet sits idly by, allowing defendant to incur ever increasing expenses, it is thought to be unfair to let plaintiff bring suit after an unreasonable delay as defendant would be forced to incur substantial resources re-branding its products, and/or building up goodwill under new trade names. *See Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 703 F. Supp. 2d 1307, 1315 (S.D.

• FRIEDLAND VINING, P.A. •
(305) 777-1725 • court@friedlandvining.com

Fla. Mar. 15, 2010) ("The undue prejudice caused to the Defendant by Plaintiff's five and a half year delay is indisputable. . . . I find that Defendant has expended significant time and effort promoting its brand in the area, not only advertising but also through its establishment of several concept stores and preparations to open several more. As the Defendant has shown the existence of all three elements, I find the equitable defense of laches will likely be meritorious, thus impeding Plaintiff's ability to prove a likelihood of success on the merits."); *see also Plant Food Sys. v. AgroSource, Inc.*, 2016 U.S. Dist. LEXIS 124185, *63 (S.D. Fla. Sept. 12, 2016) ("Because the trier of fact may reasonably find the delay to not be excusable, and because the trier of fact will most likely find that the delay caused prejudice to Defendant who continued to invest extensive money and resources into its FireWall product, the equitable defense of laches may likely be meritorious, thereby limiting Plaintiff's ability to prove a likelihood of success on the merits.").

As with the acquiescence and estoppel defenses, Plaintiff's conduct similarly satisfies all the requirements for Defendants' successful assertion of the laches defense. First, Plaintiff unreasonably delayed, from October 2019 to March 2023, before filing its lawsuit. Defendants began using the Current LEGACY REUNION Graphics at the time Plaintiff identified it as the "preferred" option and have continued its use, without interruption, through the present time, including the continued availability of video promotions and performances that were posted from 2019 forward and have remained online through today. SOF, ¶¶ 28-33.  Plaintiff has been aware of Defendants' ongoing use of the Current LEGACY REUNION Graphics through Defendants' online presence and the performance of nearly two dozen LEGACY REUNION Act shows between 2019 and 2023. *Id.*, ¶¶ 22, 28-33; Smith Decl., ¶¶ 30-40. During these four years of Defendants' use of the Current LEGACY REUNION Graphics, Defendants invested significant time and resources into developing their

LEGACY REUNION act by creating and utilizing promotional materials that incorporate the Current LEGACY REUNION Graphics for all their performances throughout the United States. *Id.*, ¶¶ 19, 21-27. These investments were not for the purpose of infringing the EARTH WIND & FIRE and PHOENIX logo trademarks but rather to strengthen the "preferred" Current LEGACY REUNION Graphics, an undertaking that proceeded with Plaintiff's blessing in October 2019. *Id.*; Smith Decl., ¶¶ 30-40. Plaintiff's efforts to reverse its course of action and, after four years, attempt to force Defendants to cease use of the Current LEGACY REUNION Graphics should be rejected and Defendants respectfully submit that the Court should GRANT them summary judgment on the affirmative defense of laches.

### III.    CONCLUSION

For the reasons set forth above, Defendants respectfully submit that there exist no genuine issues of material fact and that the Court should grant Defendants' Motion for Summary Judgment on the grounds that Defendants' use of EARTH WIND & FIRE is non-actionable under the doctrine of nominative fair use and Plaintiff's claims related to the EARTH WIND & FIRE word mark and so-called PHOENIX logo are barred by Defendants' affirmative defenses, entitling Defendants to the entry of summary judgment on all four Causes of Action asserted in Plaintiff's Complaint.

• **FRIEDLAND VINING, P.A.** •
(305) 777-1725 • court@friedlandvining.com

DATED:  December 1, 2023                Respectfully submitted,

**FRIEDLAND VINING, P.A.**

/s/David K. Friedland
By:  **David K. Friedland**
Florida Bar No. 833479
Email:  dkf@friedlandvining.com
**Jaime Rich Vining**
Florida Bar No. 030932
Email:  jrv@friedlandvining.com
6619 South Dixie Highway, PMB 157
Miami, FL 33143
(305) 777-1725 – telephone
(305) 456-4922 – facsimile

## **CERTIFICATE OF SERVICE**

I hereby certify that on the above referenced date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the Manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

David I. Greenbaum, Esq.
David.Greenbaum@rimonlaw.com
Mark S. Lee, Esq.
Mark.Lee@rimonlaw.com
RIMON, P.C.
333 SE 2nd Avenue, Suite 2000
Miami, FL 33131

*Service via CM/ECF*

s/David K. Friedland
David K. Friedland

21