UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

EARTH, WIND & FIRE IP, LLC, a
California limited liability company,

                Plaintiff,

v.

SUBSTANTIAL MUSIC GROUP LLC, a
Wyoming and Georgia limited liability
company, and STELLAR
COMMUNICATIONS, INC., an Indiana
corporation,

                Defendant.

Action No.  1:23-cv-20884-FAM

Judge: Honorable Federico A. Moreno

## PLAINTIFF EARTH WIND & FIRE IP, LLC'S MOTION FOR SUMMARY JUDGMENT OF LIABILITY ON LANHAM ACT CLAIMS

Defendants' admissions and other undisputable facts establish that Defendants are using Plaintiff's "Earth, Wind & Fire" trademarks and other advertising in a way that misleads the public into falsely believing that a musical group they promote is, or is associated with, the real "Earth, Wind & Fire." Plaintiff Earth Wind & Fire IP, LLC ("EWF" or "Plaintiff") moves for summary judgment pursuant to Fed. R. Civ. P. 56 and Local Rules 7.1 and 56.1 that Defendants Substantial Music Group LLC and Stellar Communications, Inc. ("Defendants") are liable for trademark infringement, false designation of origin and false advertising under the Lanham Act as a matter of law, for the reasons described below.

## TABLE OF CONTENTS

Page

I.  SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY ........................... 1

    A.  Plaintiff and its Trademarks .................................................................................. 1

    B.  Defendants' Conduct .............................................................................................. 2

II.  ARGUMENT ............................................................................................................ 6

    A.  Defendants Are Liable for Trademark Infringement, Unfair Competition and False Advertising under the Lanham Act as a Matter of Law. ............................... 6

        (1)  Applicable Legal Standards. ...................................................................... 6

            a.  Trademark Infringement. ................................................................ 6

            b.  False Designation of Origin. .......................................................... 6

            c.  False Advertising ........................................................................... 6

        (2)  Defendants Are Using EWF's Marks in a Way that is Likely to Cause Consumer Confusion as a Matter of Law. .................................................. 7

        (3)  Defendants' Affirmative Defenses Lack Merit ......................................... 11

            (a)  Defendants' Abandonment Defense Lacks Merit. ........................ 11

            (b)  Defendants' Acquiescence, Waiver, Estoppel and Laches Defenses Lack Merit. ................................................................................... 12

            (c)  Defendants' "Nominative Fair use" Defense Lacks Merit. .......... 14

III.  CONCLUSION ....................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alliance Metals, Inc., v. Hinely Industries, Inc.*,
  222 F.3d 895 (11th Cir. 2000) .................................................................................8

*Brother Records, Inc. v. Jardine*,
  318 F.3d 900 (9th Cir. 2003) .................................................................................16

*Commodores Entertainment Corp. v. McClary*,
  2015 WL 12843871 (M.D. Fla. 3/10/15) .......................................................8, 9, 15

*Commodores Entertainment Corporation v. McClary*,
  2016 WL 7366948 (M.D. Fla. 2016) ......................................................................15

*Commodores Entertainment Corporation v. McClary*,
  314 F. Supp. 3d 1246 (M.D. Fla. 2018)........................................................8, 14, 15

*Commodores Entertainment Corporation v. McClary*,
  822 Fed. Appx. 904 (11th Cir. 2020)......................................................................15

*Commodores Entm't Corp. v. McClary*,
  879 F.3d 1114 (11th Cir. 2018) .......................................................................14, 15

*Commodores Entertainment Corporation v. McClary*,
648 Fed. Appx. 771 (11th Cir. 2016)........................................................................15

*Dawkins v. Fulton Cty. Gov't*,
  733 F.3d 1084 (11th Cir. 2013) .............................................................................13

*Florida International University Board of Trustees v. Florida National
   University, Inc.*
  830 F. 3d 1242 (11th Cir. 2016) ..............................................................................7

*Frehling Enterprises, Inc. v. International Select Group, Inc.*,
  192 F. 3d 1330 (11th Cir. 1999) .....................................................................8, 9, 10

*Home Management Solutions, Inc. v. Prescient, Inc.*,
  2007 WL 2412834 (S.D. Fla. August 21, 2007)......................................................13

*Kason Industries, Inc. v. Component Hardware Group, Inc.*,
  120 F. 3d 1199 (11th Cir. 1997) .............................................................................12

## <u>TABLE OF AUTHORITIES CONT'D</u>

**Page(s)**

**Cases**

*Neo4j, Inc. v. Pure Think, LLC*,
    480 F. Supp 3d 1071 (N.D. Cal. 2020) ...............................................................11

*North American Medical Corp. v. Axiom Worldwide, Inc.*,
    522 F.3d 1211 (11th Cir. 2008) .........................................................................7

*Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*,
    496 F.3d 1231 (11th Cir. 2007) .........................................................................6

*Osmose, Inc. v. Viance, LLC*,
    612 F. 3d 1298 (11th Cir. 2010) ........................................................................7

*Parsons v. Regna*,
    847 Fed. Appx. 766 (11th Cir. 2021) ...............................................................15

*Pinnacle Advertising and Marketing Group, Inc. v. Pinnacle Advertising and
    Marketing Group*,
    LLC, 2019 WL 7376779 (S.D. Fla. 9/19/2019)................................................13

*Pinnacle Advertising and Marketing Group, Inc. v. Pinnacle Advertising and
    Marketing Group, LLC*,
    7 F(11th Cir. 2021) ...........................................................................................14

*Schultz Container Systems, Inc. v. Mauser Corp..*,
    2012 WL 1073153 (N.D. Ga. March 28, 2012)................................................11

*Silverton Mortgage Specialists, Inc. v. FDIC for Silverton Bank, N.A.*,
    2012 WL 13001592 (N.D. Ga. 9/28/2012)...........................................8, 9, 10, 11

*Slingmax, Inc. v. Mercal Rope & Rigging, Inc.*,
    2016 WL 4073675 (E.D. Mo. August 1, 2016) ................................................11

*Therapeutics MD, Inc. v. Evofem Biosciences, Inc.*,
    2022 WL 1013278 (S.D. Fla. March 30, 2022) ................................................13

*Trilink Saw Chain, LLC v. Blount, Inc.*,
    583 F. Supp. 2d 1293 (N.D. Ga. 2008) ..............................................................8

*Unique Sports Products, Inc. v. Babolat VS*,
    403 F. Supp 2d 1229 (N.D. Ga. 2005) ..............................................................14

*University of Alabama Bd. Of Trustees v. New Life Art, Inc.*,
    683 F. 3d 1266 (11th Cir. 2012) ......................................................................12

<u>**TABLE OF AUTHORITIES CONT'D**</u>

**Page(s)**

**Cases**

*University of Florida v. KPB, Inc.*,
   88 F. 3d 773 (11th Cir. 1996) ........................................................................................7

**Statutes**

Lanham Act.......................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 56...........................................................................................................1

Local Rules 7.1 and 56.1.................................................................................................1

I.        **SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY**

A.        **Plaintiff and its Trademarks**

As Defendants advertise, "Earth, Wind & Fire dominated the 70's with their monster grooves and high energy, danceable hits, garnering 20 Grammy Award nominations and a Hall of Fame induction along the way."  (Statement of Material Facts ["SMF"] ¶ 3.)[1] Founded by Maurice White in 1969, since 1971 "Earth, Wind & Fire" has released 42 albums, and placed seven top ten singles on the *Billboard* "Hot 100" Sales Charts that have been played at least hundreds of millions of times over the radio and streamed billions of times over the Internet. "Earth, Wind & Fire" is among the best-selling music artists of all time, with sales of over 90 million records worldwide. (SMF ¶¶ 3-6.)  It continues to perform live up to 80 times per year, and spends millions of dollars promoting its shows each year. (SMF ¶¶ 6-7.)

Founder Maurice White owned the trademarks that symbolized the goodwill associated with the band he created, and he obtained trademark registrations for the "EARTH, WIND & FIRE" word mark and a "Phoenix" logo used by the band during his lifetime, as shown at right (SMF ¶ 8):



EWF's "Phoenix" logo was first used on an "Earth, Wind & Fire" record album in 1978, and in the years since it has been used on another record album cover, to announce live concert tours, and to identify Plaintiff's online "Earth, Wind & Fire" merchandise store:

---

[1] All factual  citations in this brief reference EWF's concurrently filed Statement of Material Facts by the paragraph number which contain the pinpoint record citations for those facts.

   

(SMF ¶ 12.)

For more than a decade, Maurice White, Plaintiff, and Plaintiff's licensee also used a stylized version of the "Earth, Wind & Fire" word mark on "Earth, Wind & Fire's" https://www.earthwindandfire.com/ website and in advertising for "Earth, Wind & Fire's" entertainment services:



(SMF ¶ 9.)

Maurice White died in 2016. His "Earth, Wind & Fire" trademark rights were assigned to his living trust during his lifetime, and to Plaintiff EWF following his death. (SMF ¶ 10.)

Beginning in the late 1990's Maurice White, and following his death EWF, exclusively licensed live musical performance rights in the above "Earth, Wind & Fire" trademarks and logos to an entity owned by one of the remaining members of the "Earth, Wind & Fire" musical group who had performed with Maurice White during the 1970s. (SMF ¶  . ) Those band members currently are Maurice White's brother and group bassist Verdine White, singer Philip Bailey, and percussionist Ralph Johnson. (SMF ¶  . )

**B.     Defendants' Conduct**

In about 2018,  Richard Smith ("Smith") of Defendants Substantial Music Group LLC and Stellar Communications, Inc. (jointly, "Defendants"), decided to form and promote a band

that would perform the music of "Earth, Wind & Fire,".  (SMF ¶ 14.) Smith had played as a

sideman for the real "Earth, Wind & Fire" for a few years in the late 1980's and early 1990's,

and the band he formed and perform in, and Defendants promote includes other individuals who

also performed as sidemen for "Earth, Wind & Fire." (SMF ¶ 15.)

   Smith was well-aware of the fame of Plaintiff's "Earth, Wind & Fire" and its word and

"Phoenix" logo marks when he formed his band. (SMF 16.)  Nevertheless, rather than give their

band a different name and acknowledge that it was a "tribute" band, Defendants called their band

"Earth Wind & Fire Legacy Reunion" and "The Legacy Reunion of Earth Wind & Fire," and

promoted it with a logo that superimposed EWF's stylized "Earth, Wind & Fire" word mark over

EWF's "Phoenix" logo mark in a manner similar to EWF as follows:

  

(Plaintiff's authorized logo, used in store          (Defendants' Unauthorized logo)
and 2017 EWF Tour Announcement)

(SMF ¶ 18.)

   Promotional text Defendants provided to venues and posted on their website spends three

of its four paragraphs describing the real "Earth, Wind & Fire" and Maurice White, and claims to

"reunite[] former members of the EWF family to continue the tradition[,]" which it describes as a

"legacy reunion" of "Earth Wind & Fire." (SMF ¶ 19.)  Nowhere does Defendants' text clarify

that Defendants' band is neither the real "Earth, Wind & Fire" nor authorized by the real "Earth,

Wind & Fire." (SMF ¶ 20.)

EWF demanded that Defendants stop the above-described conduct in September 2019, and in response, Defendants changed to different but still confusing logos, the last of which is shown at right (SMF ¶ 21):



EWF found this logo less blatantly infringing than the original, but repeatedly expressed continuing concern in October 2019 emails that Defendants' logo and other actions were still likely to cause confusion. Defendants stopped all live touring in November 2019, causing EWF to believe the infringement had stopped. (SMF ¶ 22.)

However, after two-and-a-half years, EWF learned in May 2022 that Defendants restarted their tour promotion  activities for events starting in September 2022 with their latest logo, but the same textual materials described above. (SMF ¶ 23.) Defendants also added "FAQ" text to their promotional materials in which they specifically denied that their band was an "Earth, Wind & Fire" tribute band. (SMF¶  24.)  About the same time, EWF learned that Defendants also posted online and forwarded to venues a video of their band that prominently uses the  "Earth, Wind & Fire" word mark and, after prominently using that work mark alone at its beginning, adds "Legacy Reunion" in a way that implies Defendants are or are associated with Plaintiff, as shown below:



(SMF ¶ 25.)

As a result, EWF in June 2022 sent another letter demanding Defendants stop the above conduct. (SMF ¶ 26.)  Defendants did not stop. (SMF ¶ 27.)

Text and graphic materials Defendants provide to venues since they restarted their live performances 2022 have only increased confusion. Venues now claim that Defendants' band includes "original members" of and the "legendary artists of Earth, Wind & Fire." (SMF ¶ 29.) "Free media" runs stories which claim that Defendants' band is the real "Earth, Wind & Fire." (SMF ¶ 30.) Venues and ticketing agencies use images of real "Earth, Wind & Fire" members Verdine White, Philip Bailey and Ralph Johnson to advertise live concerts by Defendant's band. (SMF ¶ 31.)  Defendants' live concerts are included in the same event listings as real "Earth, Wind & Fire's" live concerts, and shows by Defendants' band are identified as "Earth, Wind & Fire" concerts on online ticketing websites.   (SMF ¶¶ 32,)  Not surprisingly, consumers attending concerts by Defendants' band have complained to EWF and in publicly posted online reviews that they were misled by such activities.[2]  (SMF ¶ 33.)    EWF was forced to file the present action to stop Defendants' misconduct.

---

[2] For example, one such email states that "I attended the EWF legacy reunion in Pensacola Florida in hopes of seeing Philip Bailey, Verdine White and others from the original band.  Their pictures are on the advertisement, posters, or whatever. The impression of Reunion would be original band members from various years. Why is it misleading?  The pictures should be removed from advertisement. The details read friends and family or something like that." Another email recently complained that Defendants' advertising amounted to a "bate[sic] and switch," and advised that she was demanding her money back. (SMF ¶ 33.)
A third party's Facebook comment next to a picture Richard Smith playing the guitar behind colorful "Earth Wind & Fire says "If the three remaining Original Members are not in this tour, this is basically a rip-off!"  (SMF ¶ 33.)
Online reviews of Defendants' band complain, for example: "NOT EWF!  The description for this concert was incredibly misleading to the point of criminal…"  "NOT EARTH WIND AND FIRE!  This was not EWF!  Really thought it was going to be the original members. Nope it was basically a tribute band." "Fake Band.  …VERY DISAPPOINTED! The advertising for this show is VERY misleading and by no means explained what was really going to happen at the venue."  "Disappointed   I have seen Earth Wind & Fire over 30 times. I was disappointed that this was NOT the REAL group featuring Philip Bailey, Ralph Johnson & Verdine White." "NOT

## II.    ARGUMENT

### A.    Defendants Are Liable for Trademark Infringement, Unfair Competition and False Advertising under the Lanham Act as a Matter of Law.

#### (1)    Applicable Legal Standards.

##### a.    Trademark Infringement.

"[T]o prevail on a trademark infringement claim based on a federally registered mark, 'the registrant must show that (1) its mark was used in commerce by the defendant without the registrant's consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive.' " *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (quoting *Burger King Corp.*, 710 F.2d at 1491).

##### b.    False Designation of Origin.

"[T]o establish liability [for false designation of origin] under § 43(a) [of the Lanham Act], the plaintiff must prove…: (1) its mark is inherently distinctive or has acquired secondary meaning, (2) its mark is primarily non-functional, and (3) the defendant's mark is confusingly similar." *University of Florida v. KPB, Inc.,* 88 F. 3d 773, 776-77 (11th Cir. 1996)

##### c.    False Advertising

"[T]o establish…a false advertising claim, the movant must establish that: "(1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers,  (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the movant has been-or is

---

THE REAL EARTH WIND AND FIRE   This was not the real band but a cover group." (SMF 33.)

likely to be- injured as a result of the false advertising." *Osmose, Inc. v. Viance, LLC*, 612 F. 3d 1298, 1308 (11th Cir. 2010).

Lanham Act unfair competition and false advertising claims are broader than trademark infringement because they do not require misuse of a registered mark, but all these claims focus on "likelihood of confusion," that is, whether Defendants used Plaintiff's marks or advertising in a way that misleads or deceives the public into believing that Defendants are associated or affiliated with Plaintiff when they are not. *Florida International University Board of Trustees v. Florida National University, Inc.* 830 F. 3d 1242, 1265 (11th Cir. 2016). Defendants' use of EWF's marks and advertising does that here.

> ### (2)     Defendants Are Using EWF's Marks in a Way that is Likely to Cause Consumer Confusion as a Matter of Law.

Defendants' actions are likely to cause confusion pursuant to the seven factors the Eleventh Circuit says should be considered to demonstrate likelihood of confusion. *North American Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1220 (11th Cir. 2008). The strength of Plaintiff's mark and evidence of actual confusion are the most important factors. *Frehling Enterprises, Inc. v. International Select Group, Inc.,* 192 F. 3d 1330, 1335 (11th Cir. 1999).   And "[a]lthough likelihood of confusion generally is a question of fact, it may be decided as a matter of law." *Alliance Metals, Inc., v. Hinely Industries, Inc.*, 222 F.3d 895, 907 (11th Cir. 2000); *Silverton Mortgage Specialists, Inc. v. FDIC for Silverton Bank, N.A.*, 2012 WL 13001592 (N.D. Ga. 9/28/2012) (granting summary judgment for plaintiff on trademark infringement claim). Those factors are:

*Mark Strength*- "The stronger the mark, the greater the scope of protection accorded to it." *Frehling*, 192 F.3d at 1335. The strength of a mark is determined by its

inherent or acquired distinctiveness. *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293 (N.D. Ga. 2008).

Here, Plaintiff's "Earth, Wind & Fire" marks are both inherently distinctive and have acquired tremendous distinctiveness from over 50 years of advertising and use in the marketplace. That more than establishes "strong" marks. *Silverton Mortgage Specialists, Inc.*, 2012 WL 13001592, *13 (ten years of use and $260,000 spent in advertising established mark's strength for summary judgment purposes).

***Mark Similarity-*** Defendants' mark is similar to Plaintiff's because it subsumes the entirety of Plaintiff's "Earth, Wind & Fire" word mark without limiting language, and the entirety of the "Phoenix" logo, to advertise live concerts to similar fans as shown above. This favors likely confusion. *Commodores Entertainment Corp. v. McClary*, 2015 WL 12843871, *4-*5 (M.D. Fla. 3/10/15); see also, 314 F. Supp. 3d 1246, 1250 (M.D. Fla. 2018) (placing plaintiff's marks and using other associational and historical language in defendants' advertising "improperly suggested Plaintiff's endorsement of Mr. Mclary's band").

***Service Similarity*-** "The greater the similarity between the products and services, the greater the likelihood of confusion." *Silverton Mortgage Specialists, Inc*., 2012 WL 13001592 at *14. In determining similarity, the question is whether "the goods [or services] are so related in the minds of consumers that they get the sense that a single producer is likely to put out both..." *Id.* Defendants offer the same type of live musical entertainment services in a way that "would appeal to the similar ban base (,)" favoring

likely confusion. *Commodores Entertainment Corp. v. McClary*, 2025 WL 12843871 at *4-*5.

   ***Sales Methods and Customer Similarity***- Similar methods of selling similar services are more likely to confuse consumers  *Frehling*, 192 F.3d at 1339.  Here, the same online ticket sales methods from the same online ticketing companies are used by the parties, with the real "Earth, Wind & Fires'" live concerts and Defendants' band's live concerts often included in the same online listings. (White Decl.    and Exs.    thereto.)  Further, the same consumers of the real "Earth, Wind & Fire's" music attend both events. (SMF  .) This favors likely confusion.

   ***Advertising Similarity***-Similarity of advertising methods favors likely confusion. *Frehling*, 192 F.3d at 1340. Here, both EWF and Defendants use Facebook, websites other social media, "free" local press coverage, and radio to promote their respective bands' live musical events. (SMF    .) This favors likely confusion.

   ***Defendants' Intent***- Defendants admit they were well-aware of "Earth, Wind & Fire" and its word and phoenix logo marks when they decided to use them, as well as  the text and graphics that describe at length the real "Earth, Wind & Fire" and falsely imply Defendants' relationship to it, to promote their band. (Smith Depo.   .)  "[T]his fact alone" is enough to infer confusing similarity. *Frehling*, 192 F.3d at 1440.

   ***Actual Confusion***- Actual confusion is the most important and best evidence of likely confusion. *Caliber Auto.* 605 F.3d 931, 936 (11th Cir. 2010). "All potential consumers of the relevant product or service, including middlemen, can inform the inquiry, and the ultimate consumers deserve special attention." *Caliber Auto.*, 605 F.3d at 936-37. "[T]he quantum of evidence needed to show actual confusion is relatively

small[,]" *Id*. at 937, because "[a]ctual confusion by a few customers is evidence of likelihood of confusion by many customers." *Silverton Mortgage Specialists, Inc*., 2012 WL 13001592 at *18, citing *Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1185 (11th Cir. 1985).

Here, there is abundant evidence of actual confusion by consumers as shown above. Further, textual and digital materials Defendants provided to local venues resulted in significant "middleman" confusion that facilitated consumer confusion as described above. This manifests actual confusion. *Caliber Auto.*, 605 F.3d at 936-37.

**Advertising Text and Graphics Confusion-**Defendants' promotional text recounting the achievements of the real "Earth, Wind & Fire," their vague and brief claims to be "Earth, Wind & Fire "family" and the "Legacy Reunion" of "Earth, Wind & Fire," and their denials that their band is a "tribute" band all misleadingly implies that Defendants' band is, or is associated with, the real "Earth, Wind & Fire."  Such actions have actually confused venues, local media, online ticketing companies, and consumers who were induced to purchase tickets to Defendants' event thinking they were coming to see the real "Earth, Wind & Fire." (SMF    ) . Such conduct has harmed EWF. (SMF    .)

Weighing all the factors and evidence, summary judgment of liability should be entered here. "[N]o genuine issues of material fact …dispute… the conclusion that Plaintiff's mark is strong, that [Defendants] intentionally sought to take advantage of Plaintiff's established mark, and that Defendants' actions resulted in confusion that injured Plaintiff's business." *Silverton Mortgage Specialists, Inc.,* 2021 WL 13001592 at

*21 (granting summary judgment for plaintiff on trademark infringement and other Lanham Act claims).

### (3)    Defendants' Affirmative Defenses Lack Merit.

Unable to factually dispute the misleading nature of their conduct, Defendants try to avoid  it by raising affirmative defenses that either fail to state a defense at all or lack evidence and should be rejected on summary judgment. (See Dkt. No. 21.)

### (a)    Defendants' Abandonment Defense Lacks Merit.

Defendants' Answer and Counterclaim alleges that eight tribute bands or events it identifies have caused Plaintiff's "Earth, Wind & Fire" trademarks to lose all "trademark significance." (Dkt. No. 21.)  However, those allegations not only do not support trademark abandonment as a matter of law, see *Neo4j, Inc. v. Pure Think, LLC*, 480 F. Supp 3d 1071 (N.D. Cal. 2020), and *Slingmax, Inc. v. Mercal Rope & Rigging, Inc*., 2016 WL 4073675, *5 (E.D. Mo. August 1, 2016), and *Schultz Container Systems, Inc. v. Mauser Corp..*, 2012 WL 1073153, *18-*19 (N.D. Ga. March 28, 2012) (granting motions to dismiss, strike and enter  summary judgment on abandonment defense), they affirmatively disprove the abandonment they purport to allege.[3]  As explained at length in a pending motion (See Dkt. Nos 26, 28), "tribute band" use cannot support an abandonment defense because those bands use "WEF's "Earth, Wind & Fire" mark to identify the real "Earth, Wind & fire," and such "source identifying" uses strengthen a mark rather than weaken it or make it generic.  Should this Court not grant the pending motion to dismiss or strike that affirmative defense, it should enter summary judgment against Defendants for these reasons.

---

[3] Plaintiff has moved to dismiss and strike that defense for these reasons, and that motion is pending. (Dkt. Nos. 26, 38.)

(b)      **Defendants' Acquiescence, Waiver, Estoppel and Laches
Defenses Lack Merit.**

These related equitable defenses all fail as a matter of law on the undisputed facts present

here.[4]

Defendants cannot prove acquiescence, because acquiescence requires that "1) the

plaintiff actively represented it would not assert a right or claim; (2) the delay between the active

representation and assertion of the right or claim was not excusable; and (3) the delay caused the

defendant undue prejudice." *University of Alabama Bd. Of Trustees v. New Life Art, Inc.,* 683 F.

3d 1266, 1281 (11th Cir. 2012)*.*

Here, EWF never "actively represented it would not assert a right or claim."  Any "delay"

was excusable because of Defendants' two-and-a-half year cessation of touring. And any such

"delay" could not have caused "undue" or any prejudice, because Plaintiffs affirmatively

asserted and reasserted its rights in September 2019, October 2019 and June 2022, months and

years before Defendants resumed touring in September 2022, and Defendants moved forward

despite full knowledge Plaintiff's claimed rights.

Defendants cannot prove waiver, which can only be "based upon the intentional

relinquishment of a known right." *Home Management Solutions, Inc. v. Prescient, Inc.*, 2007 WL

2412834, *3 (S.D. Fla. August 21, 2007). "Delay" in bringing suit "does not create a genuine

issue of material fact as to the waiver defense because Plaintiff's delay is not evidence of

'intentional relinquishment." *Pinnacle Advertising and Marketing Group, Inc. v. Pinnacle

Advertising and Marketing Group,* LLC, 2019 WL 7376779, * (S.D. Fla. 9/19/2019) (granting

_____

[4] While Defendants assert them as separate defenses, in the Lanham Act setting, "estoppel" and
"laches" are the same equitable defense of "estoppel by laches."  *Kason Industries, Inc. v.
Component Hardware Group, Inc.*, 120 F. 3d 1199, 1203 (11th Cir. 1997). EWF nevertheless
addresses them separately herein,

summary judgment for plaintiff on waiver defense). As EWF never "intentionally relinquished" its rights, instead consistently asserting and reasserting them, the defense fails. *Id.*

"Estoppel" requires that "1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation." *Dawkins v. Fulton Cty. Gov't*, 733 F.3d 1084, 1089 (11th Cir. 2013) (citation omitted). Here, EWF misrepresented no material facts, the undisputed facts are that EWF consistently asserted its rights, and there is no factual basis for Defendants to claim reasonable reliance on any nonexistent misrepresentation. *Therapeutics MD, Inc. v. Evofem Biosciences, Inc.*, 2022 WL 1013278, *13 (S.D. Fla. March 30, 2022) (granting plaintiff summary judgment on equitable estoppel affirmative defense because there was no evidence of material misrepresentation by plaintiff or reasonable reliance by defendant).

Finally, Defendants cannot prove laches. "[T]hree elements' [are required]…to successfully assert laches as a defense: (1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Pinnacle Advertising and Marketing Group, Inc. v. Pinnacle Advertising and Marketing Group, LLC,* 7 F, 4th 989, 1005(11th Cir. 2021). Florida's four-year statute of limitations is the touchstone by which the laches is measured. *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1141 (11th Cir. 2018).

Here, EWF filed less than four years after Plaintiff discovered and demanded that Defendants stop their infringing conduct, Defendants' two-and-a-half year cessation of tour

promotion makes any "delay" during that period excusable as a matter of law, and Defendants could not have been "unduly" prejudiced because they always knew about Plaintiff's claims when the engaged in their infringing conduct See, e.g., *Unique Sports Products, Inc. v. Babolat VS*, 403 F. Supp 2d 1229, 1240 (N.D. Ga. 2005) (granting summary judgment to plaintiff on laches defense because it brought suit less than four years before discovering defendants' infringement).

(c)     <strong>Defendants' "Nominative Fair use" Defense Lacks Merit.</strong>

"Nominative fair use" allows a defendant to use "a plaintiff's mark to describe the plaintiff's product for the purposes of…comparison to the defendant's product," but only when a defendant does "nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Commodores Entertainment Corporation v. McClary*, 314 F. Supp. 3d 1246, 1249 (M.D. Fla. 2018).

Defendants here did *everything* to suggest "sponsorship or endorsement by the trademark" holder EWF as described at length above, and Defendants therefore cannot claim "nominative fair use" as a matter of law. The Eleventh Circuit and courts within it have repeatedly rejected fair use defenses when defendants made confusing use of their former band's marks to promote a new band.  See, e.g., *Commodores Entertainment Corporation v. McClary*, 2016 WL 7366948 (M.D. Fla. 2016) (former "Commodores" guitarist could not use "Commodores Founder Thomas McClary" to promote his new band because it implied endorsement by the "Commodores"); *Commodores Entertainment Corporation v. McClary, supra,* 314 F. Supp. 3d 1246 (M.D. Fla. 2018) (former guitarist could not use of "The Commodores Experience featuring Thomas McClary," "Commodore's Experience starring founder Thomas McClary," "Commodores Experience with Founder Thomas McClary,"  or "The Commodores experience Thomas McClary Founder of the Commodores"  on fair use

14

grounds because they all suggested sponsorship or endorsement by the

"Commodores"):*Commodores Entertainment Corporation v. McClary,* 2015 WL 12843871 at

*5 ("a likelihood of confusion exists, thereby defeating the nominative fair use defense…use of

the Mark in "Thomas McClary's Commodores" suggests that McClary's band is sponsored or

endorsed by the Commodores"). The Eleventh Circuit repeatedly affirmed these decisions.

*Commodores Entertainment Corporation v. McClary*, 822 Fed. Appx. 904 (11th Cir. 2020); 879

F.3d 1114 (11th Cir. 2018); 648 Fed. Appx. 771 (11th Cir. 2016),

      The Eleventh Circuit emphasized this principle again in *Parsons v. Regna*, 847 Fed.

Appx. 766 (11th Cir. 2021), when it rejected a concert promoter's invocation of the nominative

fair use defense for the promoter's use of the name "THE PROJECT original VOICE, Original

MUSICIANS of the Alan Parsons Project Band." The Court affirmed that name created likely

confusion and infringed Alan Parson's trademark rights in "The Alan Parsons Project" musical

group he founded, even though THE PROJECT included five of the seven original members of

the "Alan Parsons Project" band.

      The Ninth Circuit similarly held that a former member of the "Beach Boys" could not

tour under the title "Beach Boys Family and Friends" because there was a risk that the public

would believe the "Beach Boys" themselves were appearing, even though he was a former

"Beach Boys" member and the band actually included family members and friends of the "Beach

Boys." *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908-909 (9th Cir. 2003).

      This Court should enter summary judgment against Defendants on this defense because

their advertising and use of Plaintiff's "EARTH, Wind & Fire" marks has caused and is likelhy

to cause continuing confusion as a matter of law.

## III.   CONCLUSION

      Defendants should be found liable for trademark infringement, unfair competition and

false advertising under the Lanham Act for all the reasons described above.

Dated:   December 1, 2023                                 Respectfully submitted,

                                                                  /s/  David I Greenbaum
                                                                  David I. Greenbaum
                                                                  Florida Bar No. 1021400
                                                                  RIMON, P.C.
                                                                  333 SE 2nd Avenue, Suite 2000
                                                                  Miami, Florida 33131
                                                                  Telephone: 646.779.0787

                                                                  Mark S. Lee
                                                                  *Admitted Pro Hac Vice*
                                                                  RIMON, P.C.
                                                                  2029 Century Park East, Suite 400N
                                                                  Los Angeles, California 90067
                                                                  Telephone: 213.375.3811

                                                                  *Attorneys for Plaintiff*